# CHARLESTON.

## HART v. LARKIN, TRUSTEE.

Submitted January 19, 1909.    Decided November 16, 1909.

1. MORTGAGES—*Trustee—Bond—Necessity.*
    A trustee in a deed of trust to secure the payment of money may act without bond, unless the same is required of him by the grantor or a beneficiary. (p. 229).

2. VENDOR AND PURCHASER—*Remedies of Vendor—Collection of Purchase Money—Incumbrances—Covenant of Warranty.*
    The collection of purchase money will not be retarded solely because the grantor has not cleared the land of prior liens, when the conveyance is with covenants of general warranty but without covenants of further assurance. (p. 230).

3. MORTGAGES—*Trust Deed—Foreclosure—Injunction.*
    If liens which are clearly of unascertained amounts exist prior to a deed of trust, creating an impediment to a fair sale, the trustee may be enjoined by the grantor from foreclosing the trust until such impediment is removed. (p. 230).

4. SAME.
    Upon vacation motion to dissolve an injunction against a sale under a deed of trust because of impediment by prior liens of unascertained amounts, the judge cannot take a bond as a substitute for one of such prior liens and thereby consider that lien discharged, particularly when that lien arises out of an

attachment levy in an action of trespass, the party entitled to the lien is not before him by notice, and that party does not consent to accept the bond as a release of the lien. (p. 231).

Appeal from Circuit Court, Randolph County.

Bill by Fenner F. Hart against George A. Larkin, trustee, and others, to enjoin a sale under a deed of trust. Decree for defendants and complainant appeals.

*Reversed and Remanded.*

*W. B. Maxwell,* for appellant.

*Talbott & Hoover,* for appellees Larkin and Gray.

ROBINSON, JUDGE:

Gray conveyed a large and valuable tract of timber land, and other timber rights and personal property in connection therewith, to Hart, Thurston and Eldred. The consideration was $61,500, of which the sum of $53,500 was deferred in payment. And on the same day the vendees executed a deed of trust on the whole property to George A. Larkin, trustee, to secure this deferred purchase money. Two attachment liens existed against the property at this time, growing out of pending actions of trespass against Gray; one in favor of Brown & Hill, claiming $50,000 damages, and the other in favor of E. D. Tupper, claiming $30,000 damages. As to each of these actions and the attachment proceedings therewith a *lis pendens* had been theretofore duly recorded. The deferred purchase money, evidenced by notes, was payable in instalments. The deed of trust provided for a sale by the trustee upon default in the payment of any note. Some of the purchase money notes were paid. Default in the payment of others being made, however, the trustee, at the request of Gray, advertised the property for sale pursuant to the terms of the deed of trust.

Hart sought an injunction to stay the sale. It was awarded. He complained that the trustee had not given bond before proceeding to execute the trust. His bill averred the existence of the attachment liens and showed that the uncertainty in the amount of each of them rendered a fair and advantageous sale of the property impossible. He also set up as between himself and his co-tenants, or partners, certain claims and equities, which had arisen subsequent to the purchase of the property

and the execution of the deed of trust securing the purchase money. A subsequent deed of trust, in favor of the wife of Thurston, was attacked as invalid as to plaintiff's interest and rights in the property. The substance of the prayer was that the trustee be inhibited from enforcing the deed of trust until he should give bond, until the amounts of the prior liens should be ascertained, and until the rights and equities of the plaintiff against his co-owners of the property should be settled and determined.

Depositions were promptly taken on behalf of plaintiff. This evidence related wholly to the claim of Hart against his co-owners and has nothing to do with the debt of Gray sought to be enforced by the sale which was enjoined. Thereafter, upon notice to Hart, the judge of the circuit court, in vacation, heard a motion made by Gray to dissolve the injunction. The motion was considered upon the bill, depositions, and answers of Gray and the trustee. The trustee offered bond for the faithful performance of his duties. A recently executed release of the Tupper lien was averred and shown. The existence of the Brown & Hill lien was admitted and a bond of $100,000 to secure the same was tendered by Gray. The judge entered a vacation order approving this bond tendered by Gray and dissolving the injunction. Hart has appealed.

The complaint that the trustee had given no bond does not avail the plaintiff. It is not shown that a bond was required of him by the grantors in the deed of trust or the beneficiary thereunder. Hart cannot complain that the trustee is acting without bond until he demands that one be given and the trustee then fails to execute bond and have the same approved by the county clerk. Code, chapter 72, section 6.

The argument that Gray could not proceed to collect the purchase money until he cleared the property of prior liens is not tenable. He conveyed by general warranty, but did not covenant for further assurance. Only upon a showing of his insolvency would equity retard the collection of the purchase money solely because he failed to clear the land of prior liens. The purchasers took no assurance as to the payment of these liens other than the personal responsibility of Gray. The covenant of general warranty is not a covenant against the mere

existence of encumbrances. *McClaugherty* v. *Croft,* 43 W. Va. 270; *Cain* v. *Fisher,* 57 W. Va. 492.

Gray was not obliged to discharge the prior liens before proceeding to foreclose the deed of trust which secures the purchase money. The collection of the purchase money may not be retarded merely because Gray has not cleared the land of these liens. He may demand and recover the purchase money before the liens are paid by him. Yet the principle that he may do so does not mean that he may use an inequitable method of collection. The absence of a covenant against liens does not give up the property to sacrificial sale. That want of covenant means no more than that Gray may collect the purchase money before paying the liens. It does not mean that he may use a method of collection discountenanced by equity. It does not mean that he may violate that principle of equity which requires that the uncertain amount of each of the liens be made certain before he may have a sale under the deed of trust. *Miller* v. *Argyle's Ex'r,* 5 Leigh 460; *Payne* v. *Webb,* 23 W. Va. 558.

That there were impediments in the way of a fair execution of the trust, when the injunction was awarded, is clear. The attachment liens were plainly uncertain as to amounts. They were dependent in this particular upon actions at law, for unliquidated damages, yet to be tried. No one could bid on the property with a certainty as to what he would have to pay on account of these liens. A purchase would be subject to them. An intending purchaser could not calculate what he could afford to pay for the property. The unascertained amounts of the liens would prevent bidding. Thus the value of the property at trustee's sale would be depreciated. Under such circumstances equity lends aid to the trustee, or to the debtor if the trustee fails to seek it. Tucker's Com., Book 2, p. 106; 1 Lomax's Digest, 425; 2 Minor's Inst., (4th Ed.), 344; *George, Trustee* v. *Zinn,* 57 W. Va., 15; *Hartman* v. *Evans,* 38 W. Va. 669; *Rossett* v. *Fisher,* 11 Grat. 492.

The release of the Tupper lien, however, took it out of consideration as an impediment to a sale by the trustee. The answer of Gray averred this release and exhibited the document evidencing it. The judge, in vacation, of course, has power to consider an answer and the proof of its allegations upon a mo-

tion to dissolve an injunction. The point that this release could not be considered at such vacation hearing is groundless.

But the acceptance and approval of the bond tendered by Gray to perform and satisfy any judgment that Brown & Hill might obtain against the property was not warranted. This was an act beyond the authority that a judge has to consider and act upon the pleadings and proofs in the cause when a motion to dissolve an injunction is made in vacation. The bond was not received and acted upon as a proof supporting the answers of Gray and the trustee. They did not aver that the Brown & Hill lien was out of the way. Gray asked in fact that it be put out of the way by the substitution of the bond for it. And that bond was acted upon as an independent thing, and virtually declared to be a release of Brown & Hill's attachment lien. Yet this action was solely upon motion to dissolve the injunction, as to which motion Brown & Hill did not even have notice. The motion to dissolve did not extend so far. Mark you, the bond was not presented in pleading or proof as one duly accepted by the officer who levied the attachment. It was not offered as a bond having the effect, under the statute, to release the lien of the attachment. Code, chapter 106, sections 10 and 11. That would have made a very different case. If the fact had been presented that by some lawful act, or order of court in the attachment suit, the lien had been discharged, it could have been considered upon the motion to dissolve. But upon that motion the judge could not make an order substituting a bond for the lien. Such action was not only beyond the province of the motion, but beyond the power of the judge in the premises. *Monroe* v. *Bartlett,* 6 W. Va. 441; *Kinports* v. *Rawson,* 29 W. Va. 487.

The Brown & Hill lien still existed, notwithstanding the giving of the bond. Only by proper proceedings in the attachment case could that lien be discharged, unless by formal release of the parties. In no way did the bond effect Brown & Hill's right to the lien. An intending purchaser would say that the lien still existed; that Brown & Hill might resort to it rather than to the bond. They never consented to receive the bond as a discharge of their attachment. They were not parties to its acceptance. They were given no day to object to its sufficiency, even if the judge had been clothed with power to take the bond as

a substitute for their right under the lien. The impediment to a fair sale under the deed of trust was not eliminated by the bond. That impediment was as much as ever in the way. Because it continued to exist, the order dissolving the injunction was erroneous.

The other features of the cause do not now demand consideration. They pertain to its further progress. The order dissolving the injunction will be reversed, the injunction re-instated, and the cause remanded to be proceeded in according to principles of equity.

*Reversed and Remanded.*

BRANNON, JUDGE, *(dissenting):*

Were it the case of a deed of trust for an ordinary debt, I would have no question; but it is purchase money. When a conveyance is made, and at the same time, as part of the transaction, a deed of trust for purchase money is given, it is the same as the reservation of a lien in the conveyance. *Roush* v. *Miller,* 39 W. Va. 638. As there said, it is only another mode of retaining a lien. Indeed, I may say it is more forceful, because it is an agreement to sell for the lien, a pledge. Here is a covenant of general warranty, not broken by the existence of incumbrances. Our cases settle that in a suit to enforce a reserved vendor's lien, the creditor cannot be required to make prior judgment lienors parties. *Neely* v. *Ruley,* 26 W. Va. 686; *Arnold* v. *Coburn,* 32 *Id.* 272. In fact, this Court has said that there should not be a convention of lienors in such a suit. *Moreland* v. *Metz,* 24 W. Va. 119. If there is a defect of *title,* there could be no question that injunction lies, as a covenant of general warranty applies to that; but we have not defect of title, but an *incumbrance,* and no covenant against incumbrances. A general warranty is not. *Cain* v. *Fisher,* 57 W. Va. 492. I apprehend that the cases sustaining injunction were nearly all not vendor's liens, or where there was other covenant than warranty. I incline to think that the weight of authority is with me. There may be some the other way. By English law no injunction would lie; but it is said the Virginia law is more liberal in enjoining before eviction for bad title. See Judge GREEN's opinion in *Walmsley* v. *Stalnaker,* 24 W. Va., p. 222. There is some authority against me. I myself

wrote in *McClaugherty* v. *Croft,* 43 W. Va., p. 272, that equity
will relieve even against purchase money if the title be defective,
or a suit to subject it to a lien be pending, or if there are in-
cumbrances and the vendor insolvent.   If the vendor is insolvent
I would not question.   Equity would not make one pay purchase
money, if the covenant is worthless.   But in saying that pur-
chase money cannot be enforced if a suit to enforce a prior lien
is pending, did I not make the expression too broad?   Judge
Tucker said an incumbrance would do, as will be seen in
*Walmsley* v. *Stalnaker,* 24 W. Va., p. 222.   If the language in
*McClaugherty* v. *Croft, supra,* was borrowed from *Kinports* v.
*Rawson,* 29 W. Va. 487, it is not warranted, as that was a case
of defect of title.   I find on further examination that the cases
cited in the *McClaugherty Case* do not justify the statement that
equity will not enforce payment of purchase money if a suit
is pending "to subject it (the land) to a lien."   *Neely* v. *Ruley,*
26 W. Va. 686, and other cases make *insolvency* of the grantor
essential where there are mere liens for equity relief.   I think
I better expressed the rule in *Jackson* v. *Land Association,* 51
W. Va. 482, limiting relief to defect of *title.*   So with *Bennett*
v. *Pierce,* 45 W. Va. 654.   I see a clear opinion by Judge SAN-
DERS as to relief against purchase money for bad *title* in *Har-
vey* v. *Ryan,* 59 W. Va. 134.   Its statement of the rule does
not include mere *liens* as constituting ground for restraint of
collection.   The fact that the incumbrance is unsettled in
amount does not convert a covenant of warranty to one against
incumbrances.   Of course, there is no question in a suit for
purchase money under an executory contract.   Shall this ven-
dor be refused his specific pledge?   How long will he be tied
up?   I apprehend that no one will say that in this equity suit
the court will oust the other court which has the case of attach-
ment, and try whether the attachment creditor has right to re-
covery and how much.   If not, then the owner of this purchase
money must await the motion of the parties in the attachment
suit, over which he has no power.   Interest accumulates, the
property goes down, and the vendor loses part of his debt, he is
sacrificed to prevent possible sacrifice of the grantee who has
failed to provide himself with a covenant against incumbrances.
The rule that equity will enjoin sale under a deed of trust where

prior liens are doubtful for any reason does not apply in this case of a deed of trust operating as if the lien were retained in the conveyance.

ROBINSON, JUDGE:

After reading Judge BRANNON's note of dissent it seems proper to say:

The owner of the purchase money has power over the attachment suit. He is the defendant therein. He may demand trial. He may promptly have the uncertain amount of the lien made certain. Yea, he may have the attachment released and the lien discharged by giving a bond to the officer who levied it. Therefore, the dissenting note is particularly in error wherein it refers to the attachment suit as one "over which he has no power." Equity requires the amount of the lien to be made certain for his benefit as well as for the benefit of the debtor. He is, equally with the debtor, interested in having an advantageous sale. In *Miller* v. *Argyle's Ex'r*, 5 Leigh 460, Judges Tucker and Cabell expressly sanction the principle that impediments to a fair sale must be removed. They make this principle apply to a deed of trust for purchase money regardless of any covenant. Here is eminent authority. None to the contrary is found. And why should the principle apply to an ordinary debt secured by a deed of trust and yet not to a purchase money debt so secured? No covenant or contract is required to invoke the principle as to ordinary debts. Why must there be a covenant to invoke it as to purchase money?